O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHRISTINA PALOS,                            )          NO. EDCV 12-00774-MAN
                                            )
            Plaintiff,                      )
                                            )          MEMORANDUM OPINION
      v.                                    )
                                            )          AND ORDER
CAROLYN W. COLVIN,[1] Acting                )
Commissioner of Social Security,            )
                                            )
            Defendant.                      )
_____)

      Plaintiff filed a Complaint on May 24, 2012, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On June 15, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on January 24, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

---

[1]      Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (See Fed. R. Civ. P. 25(d).)

SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On February 19, 2007, plaintiff filed an application for a period of disability and DIB, alleging an inability to work since September 21, 2003, due to bipolar disorder, affective mood disorder, attention deficit disorder ("ADD"), anxiety, nervousness, depression, poor sleep, mood swings, nausea, dizziness, shakiness, racing thoughts, and an inability to concentrate.[2]  (See Administrative Record ("A.R.") 46, 51, 56-57, 68, 71-72, 137, 168, 172, 193.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 51-54, 57-61), plaintiff requested a hearing (A.R. 62).  On March 19, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge John Kays (the "ALJ").  (A.R. 18-43.)  Vocational expert Susan Allison, medical expert Dr. Craig Rath (a psychologist), and plaintiff's son Javier Palos also testified.  (Id.)  On September 2, 2009, the ALJ denied plaintiff's claim (A.R. 8-17), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3).

On December 3, 2009, plaintiff sought review in this Court, which remanded the case for further proceedings in a March 1, 2011 Order ("Remand Order").  (A.R. 524-44.)  In the Remand Order, this Court directed the ALJ to:  (1) further develop the record regarding plaintiff's drug use; (2) consider properly the opinions of plaintiff's treating physicians, Dr. Ellison Chang and Dr. Israel; and (3) provide appropriate reasons, if any, for discrediting plaintiff.  (Id.)  After so doing, this Court directed the ALJ to revisit his consideration of both the lay witness testimony of plaintiff's son Javier Palos and the third party statement of plaintiff's mother Teresa Coronado as well as his determination of plaintiff's residual functional capacity ("RFC").  (A.R. 540-41.)

On April 8, 2011, the Appeals Council effectuated the Court's Remand Order and remanded

---

[2]      In the Joint Stipulation, plaintiff claims to be disabled only due to bipolar disorder and substance addiction disorder.  (Joint Stipulation ("Joint Stip.") at 2.)

2

1    the matter to the ALJ for further actions consistent with the Remand Order.   (A.R. 545-48.)

2

3    On November 22, 2011, a remand hearing was held before the ALJ.   (A.R. 447-75.)

4    Plaintiff, who was represented by an attorney, appeared and testified at the hearing.   Medical

5    expert and psychologist Joseph Malancharuvil and vocational expert Ronald K. Hatakeyama also

6    testified.  (Id.)  On March 2, 2012, the ALJ denied plaintiff's claim.  (A.R. 424-40.)  That decision

7    is now at issue in this action.

8

9                     SUMMARY OF ADMINISTRATIVE DECISION

10

11   The ALJ found that plaintiff last met the insured status requirement of the Social Security

12   Act on December 31, 2008, and that she "did not engage in substantial gainful activity during the

13   period from her alleged onset date of September 21, 2003[,] through December 31, 2008," her

14   date last insured.  (A.R. 426.)  The ALJ also found that, through her date last insured, plaintiff had

15   the severe impairments of mixed bipolar disorder, personality disorder, and substance addiction

16   disorder, but she did not have an impairment or combination of impairments that met or medically

17   equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

18   404.1520(d), 404.1525, 404.1526).  (A.R. 426-27.)

19

20   Pursuant to the Remand Order, the ALJ requested the assistance of medical expert Dr.

21   Malancharuvil to develop the record and resolve the ambiguities surrounding plaintiff's drug use.

22   (A.R. 430.)  After reviewing the medical records and questioning plaintiff at the remand hearing,

23   Dr. Malancharuvil opined that plaintiff had not abused drugs after 2002.  (A.R. 435.)  Also

24   pursuant to the Remand Order, the ALJ provided appropriate reasons for finding plaintiff to be not

25   credible and rejecting the lay witness testimony of plaintiff's son Javier Palos and the third party

26   statement of plaintiff's mother Teresa Cornado.  (A.R. 430-34, 437-38.)  The ALJ also rejected the

27   opinions of plaintiff's treating physicians, Dr. Ellison Chang, a psychiatrist, and Dr. Israel.  The ALJ

28   rejected Dr. Chang's opinion, because it:   (1) "fail[ed] to include any explanation for his

                                                        3

1   conclusions"; (2) "[wa]s inconsistent with other evidence in the record"; and (3) "relie[d] too
2   heavily on [plaintiff]'s subjective report[s]." (A.R. 436.) Dr. Israel's opinion was rejected, because
3   it: (1) "[w]as on the same 'check-off form as Dr. Chang's opinion"; (2) "fail[ed] to identify what
4   . . . clinical findings support [the] limitations"; and (3) was "internally inconsistent." (A.R. 437.)

5

6       After reviewing the record, and giving "great weight" to the mental residual RFC limitations
7   as to which Dr. Malancharuvil opined, the ALJ determined that, through the date last insured,
8   plaintiff had the RFC to perform a full range of work at all exertional levels with the following
9   nonexertional limitations:

10

11          [plaintiff] is limited to simple repetitive tasks [of] up to 4 steps in [a] habituated
12          work setting limited to object oriented work; [plaintiff] should not engage in
13          teamwork or work with others in a collaborative nature; she is precluded from safety
14          operations; she is precluded from working with and/or operating fast moving
15          machinery; and she is precluded from fast paced work such as assembly line work.

16

17   (A.R. 429.)

18

19       The ALJ found that plaintiff was unable to perform her past relevant work as a receptionist,
20   insurance clerk, nurse's assistant, or emergency room admission clerk. (A.R. 438.) However,
21   based upon plaintiff's age,[3] education,[4] work experience, and RFC, the ALJ found that "there were
22   jobs that existed in significant numbers in the national economy that [plaintiff] could have
23   performed," including "[o]ffice helper" and "[l]inen room attendant." (A.R. 439.) Accordingly, the
24   ALJ concluded that "[plaintiff] was not under a disability, as defined in the Social Security Act, at

25   _____

26       [3]     On the date last insured, plaintiff was 39 years old, which is defined as a younger
27   individual.  (A.R. 438; citing 20 C.F.R. § 404.1563.)

28       [4]     The ALJ found that "[plaintiff] has at least a high school education and is able to
     communicate in English."  (A.R. 439.)

4

1  any time from September 21, 2003, the alleged onset date, through December 31, 2008, the date

2  last insured." (A.R. 440.)

3

4                                        STANDARD OF REVIEW

5

6          Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

7  whether it is free from legal error and supported by substantial evidence. Orn v. Astrue, 495 F.3d

8  625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind

9  might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must

10  be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340

11  F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial

12  evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454

13  F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

14

15          Although this Court cannot substitute its discretion for that of the Commissioner, the Court

16  nonetheless must review the record as a whole, "weighing both the evidence that supports and

17  the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health

18  and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995

19  (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical

20  testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

21  1995).

22

23          The Court will uphold the Commissioner's decision when the evidence is susceptible to

24  more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

25  However, the Court may review only the reasons stated by the ALJ in his decision "and may not

26  affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett,

27  340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless

28  error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential

1    to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th

2    Cir. 2006)(quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also <u>Burch</u>, 400

3    F.3d at 679.

4

5                                            DISCUSSION

6

7         Plaintiff claims the ALJ failed to comply with this Court's Remand Order directing him to:

8    (1) properly assess the findings and opinions of plaintiff's treating physicians, Dr. Chang and Dr.

9    Israel; and (2) fully and fairly develop the record regarding plaintiff's drug use.  (Joint Stip. at 3.)

10

11        It is well established that an ALJ must comply with a district court's remand order.  <u>Sullivan</u>

12   <u>v. Hudson</u>, 490 U.S. 877, 886 (1989)(noting that "[d]eviation from the court's remand order in

13   the subsequent administrative proceedings is itself legal error, subject to reversal on further

14   judicial review").  However, as with other errors, an ALJ's failure to comply with a court's remand

15   order is subject to a harmless error analysis.  See <u>Burch</u>, 400 F.3d at 679 ("A decision of the ALJ

16   will not be reversed for errors that are harmless"); <u>Campos v. Astrue</u>, 2012 U.S. Dist. LEXIS

17   96988, at *5 (C.D. Cal. Jul. 12, 2012)(harmless error analysis applies when an ALJ fails to comply

18   with a court's remand order); <u>Juarez v. Astrue</u>, 2011 U.S. Dist. LEXIS 96220, at *6 (C.D. Cal. Aug.

19   26, 2011)(same); <u>Blanquet v. Astrue</u>, 2011 U.S. Dist. LEXIS 6879, at *12 (C.D. Cal. Jan. 24,

20   2011)(same); see also <u>McLeod v. Astrue</u>, 640 F.3d 881, 887-88 (9th Cir. 2011)(harmless error

21   rule).

22

23        For the reasons set forth below, the ALJ committed no reversible error in complying with

24   this Court's Remand Order.

25   ///

26   ///

27   ///

28

                                                  6

1       (1)    <u>The ALJ Set Forth Specific and Legitimate Reasons For Rejecting The</u>

2             <u>Opinions Of Plaintiff's Treating Physicians</u>.

3

4      It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze

5 evidence. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician

6 opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion

7 carries more weight than an examining physician's, and an examining physician's opinion carries

8 more weight than a reviewing physician's." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir.

9 2001); 20 C.F.R. § 404.1527(d).  The opinions of treating physician are entitled to the greatest

10 weight, because the treating physician is hired to cure and has a better opportunity to observe

11 the claimant.  <u>Magallanes</u>, 881 F.2d at 751.  When a treating physician's opinion is not

12 contradicted by another physician, it may be rejected only for "clear and convincing" reasons.

13 <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another doctor, a

14 treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate"

15 reasons supported by substantial evidence in the record.  Id.  However, an ALJ "need not discuss

16 all evidence presented to [him]." <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir.

17 1984)(emphasis in original); see also <u>Howard v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir.

18 2003)(noting that an ALJ need not discuss every piece of evidence).  An ALJ must explain only

19 why "significant probative evidence has been rejected." <u>Vincent</u>, 739 F.2d at 1395 (internal

20 quotations and citation omitted).

21

22          (a) <u>Dr. Chang</u>

23

24      On May 1, 2006, Dr. Ellison Chang, a psychiatrist, evaluated plaintiff.  (A.R. 283.)  Dr.

25 Chang noted plaintiff's complaints of racing thoughts, severe mood swings, depression, fatigue,

26 restlessness, and paranoia, as well as her past methamphetamine use and her current craving for

27 methamphetamines.  (Id.)  Dr. Chang diagnosed plaintiff with amphetamine abuse, personality

28 disorder, bipolar disorder - depressed with psychosis, and obesity.  (Id.)  Dr. Chang indicated that

1  plaintiff would be referred to the Corona Substance Abuse program for treatment.  (Id.)

2

3        On May 9, 2006, plaintiff was again treated by Dr. Chang.  (A.R. 314-17.)  Dr. Chang noted

4  that plaintiff:  denied experiencing any auditory hallucinations, visual hallucinations, or delusions;

5  acknowledged  experiencing  mania,  severe  situational  anxiety,  severe  "[d]aytime

6  tiredness/drowsiness," moderate mind racing, and slight paranoia; had an elevated energy, a

7  happy mood, and "ok" concentration; and demonstrated obsessive compulsive disorder behaviors.

8  (A.R. 314.)  Dr. Chang also noted plaintiff's  denial of any present substance abuse; however, a

9  reference  was  made  to  "amph[etamines]"  eight  months  ago.   (Id.)   Upon  mental  status

10 examination, Dr. Chang found that plaintiff had a:  "clean" general appearance; slightly rapid and

11 loud speech; "[d]isinhibited" mood and affect;  fluent, linear, and goal directed thought process;

12 and normal insight, judgment, and IQ.  (A.R. 316.)  Dr. Chang diagnosed plaintiff with bipolar

13 affective  disorder  ("BAD"),  attention  deficit  hyperactivity  disorder  ("ADHD"),  a  history  of

14 polysubstance dependence, and obesity, and he assessed her with a GAF score of 55.  (Id.)  Dr.

15 Chang opined that plaintiff's prognosis was "good."  (A.R. 317.)

16

17       In a one page Adult Narrative Report dated August 20, 2007, Dr. Chang noted that plaintiff

18 had disorganized thoughts, mildly impaired memory and judgment, evidence of depression and

19 manic syndrome, and a pleasant and anxious attitude.  (A.R. 340.)  Dr. Chang also noted that

20 plaintiff did not have an ability to:  maintain a sustained level of concentration; sustain repetitive

21 tasks for an extended period; adapt to new or stressful situations; or interact appropriately with

22 coworkers or supervisors/authority.  (Id.)  Dr. Chang noted, however, that plaintiff did have an

23 ability to manage her own funds in her best interest.  (Id.)  Dr. Chang diagnosed plaintiff with BAD

24 and ADHD, and he opined that plaintiff could not complete a 40 hour work week without

25 decompensating.  (Id.)  Dr. Chang further opined that plaintiff's prognosis was "chronic" and that

26 she had a "cyclical presentation," which was "not stabilized yet."  (Id.)

27

28       Contrary to plaintiff's contention, the ALJ articulated several specific reasons in his March

1    2, 2012 decision for rejecting the opinion of Dr. Chang.  First, the ALJ rejected the opinion of Dr.

2    Chang, because, he "fail[ed] to include any explanation for his conclusions:  [Dr. Chang] d[id] not

3    explain what clinical findings [we]re indicators that [plaintiff] w[ould] decompensate; and he

4    offer[ed] no clinical findings to support his assessment of [plaintiff]'s concentration, judgment,

5    or memory (i.e. he d[id] not indicate what tests he performed to evaluate this)."  (A.R. 436.)  As

6    the ALJ properly noted, Dr. Chang's opinion regarding the impact of plaintiff's mental impairments

7    on her ability to work consisted primarily of a standardized, circle-all-that-apply report in which

8    he failed to provide supporting reasoning or clinical findings.  The Ninth Circle has held that an

9    ALJ may "'permissbly reject[] . . . check-off reports that [do] not contain any explanation of the

10   bases of their conclusions.'"  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)(quoting Crane

11   v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996); see also Holohan, 246 F.3d at 1202 ("[T]he

12   regulations give more weight to opinions that are explained than to those that are not.").  As such,

13   the ALJ's first reason is a specific and legitimate reason for rejecting Dr. Chang's opinion.

14

15       Second, the ALJ rejected Dr. Chang's opinion, because it "[wa]s inconsistent with other

16   evidence in the record."  (A.R. 436.)  For example, the ALJ noted that Dr. Chang's opinion "[wa]s

17   inconsistent with the objective clinical findings based on identified mental status tests assessed

18   by Dr. [Romualdo] Rodriguez [(a psychiatrist)] wherein [plaintiff] demonstrated good memory,

19   good concentration, and intact insight and judgment."  (Id.)  In addition, the ALJ noted that "Dr.

20   Chang's opinion that [plaintiff] can manage her own funds [wa]s inconsistent with [plaintiff's] own

21   function report to the agency wherein she reports that she is unable to handle a saving account,

22   use a checkbook or money orders, and that she 'forget[s] to pay bills on time.'"  (Id.)  An ALJ may

23   reject the opinion of a treating physician when it is inconsistent with the evidence of record.  See

24   Magallanes, 881 F.2d at 751-54 (upholding ALJ's rejection of treating doctor's opinion that was

25   contracted by evidence in the record).  Here, the ALJ properly noted that Dr. Chang's findings

26   were inconsistent with not only the findings of Dr. Rodriguez but also plaintiff's own assessment

27

28

1   of her capabilities.[5]   Thus, the ALJ provided a specific and legitimate reason for rejecting Dr.

2   Chang's opinion.[6]

3

4         Lastly, the ALJ rejected Dr. Chang's opinion, because it "relie[d] too heavily" on the

5   subjective complaints of plaintiff, which the ALJ found to be not credible.  (A.R. 436.)  It is well

6   established that "[a] physician's opinion of disability 'premised to a large extent upon the

7   claimant's own accounts of his symptoms and limitations' may be disregarded where those

8   complaints have been properly discounted."  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d

9   595, 602 (9th Cir. 1999)(quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)); see

10  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(medical opinions based on subjective

11  complaints can be properly rejected where the subjective complaints themselves have been

12  refuted).  As noted supra, Dr. Chang's opinion is devoid of objective findings to support his opinion

13  of disability.  Further, his treatment notes largely recount plaintiff's subjective complaints, which

14  the ALJ found to be not credible, a finding that plaintiff does not contest.  Thus, insofar as Dr.

15  Chang's opinion of disability was based on plaintiff's subjective complaints, the ALJ provided a

16  legally sufficient reason for giving it no probative value.[7]

17

18        [5]    Plaintiff asserts that should this Court find that the opinion of plaintiff's treating

19  physician is not supported by the objective evidence, "the ALJ still had a duty to recontact the
     doctor to obtain clarification and/or additional evidence."  (Joint Stip. at 12.)  As noted infra, an

20  ALJ's duty to develop the record is triggered "only when there is ambiguous evidence or when the
     record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276

21  F.3d 453, 459-60 (9th Cir. 2001)(citation omitted).  However, the fact that a treating physician's
     opinion lacks objective support does not trigger the ALJ's duty to further develop the record.

22  Accordingly, plaintiff's assertion that the ALJ failed to fully and fairly develop the record is
     unavailing.

23        [6]    The ALJ also found Dr. Chang's assessment of ADHD to be "inconsistent with his

24  own evaluation notes wherein [he] diagnosed only bipolar disorder, amphetamine abuse, and
     personality disorder."  (A.R. 436; emphasis in original.)  Contrary to the ALJ's finding, it does

25  appear that Dr. Chang diagnosed plaintiff with ADHD in his May 9, 2006 treatment note.  (A.R.
     316.)  Thus, this does not constitute a specific and legitimate reason for rejecting Dr. Chang's

26  opinion.

27        [7]    Plaintiff contends that "[t]here is simply no evidence to support the implication that
     . . . Dr. Chang . . . dispensed with [his] objective professional opinion and relied wholly on

28  [p]laintiff's reported subjective complaints."  (Joint Stip. at 13.)  However, as noted supra, Dr.
     Chang's reports largely repeat plaintiff's subjective complaints and contain little, if any, objective

1    Accordingly, because the ALJ properly considered and provided appropriate reasons for

2    rejecting the opinion of Dr. Chang, the ALJ complied with the Remand Order.

3

4    (b) Dr. Israel

5

6    Dr. Israel completed a one page Adult Narrative Report for plaintiff. (A.R. 416.) Dr. Israel

7    noted that plaintiff had: a clearly organized thought process; no psychosis; a pleasant attitude;

8    a mildly impaired memory and judgment; and evidence of depression, anxiety, manic syndrome,

9    and decreased energy. (Id.) Notwithstanding these relatively mild findings, Dr. Israel found that

10   plaintiff did not show an ability to: maintain a sustained level of concentration; sustain repetitive

11   tasks for an extended period; adapt to new or stressful situations; interact appropriately with

12   others, including family, strangers, co-workers, and supervisors/authority; or manage her own

13   funds in her best interest. (Id.) Dr. Israel indicated that plaintiff needed assistance keeping her

14   appointments and taking her medications. (Id.) Dr. Israel diagnosed plaintiff with bipolar disorder

15   and ADHD. (Id.) He opined that plaintiff would not be able to complete a 40 hour work week

16   without decompensating and that her prognosis was "chronic." (Id.)

17

18   The ALJ rejected Dr. Israel's opinion, because it: (1) "[w]as on the same 'check-off form

19   as Dr. Chang's opinion"; (2) "fail[ed] to identify what . . . clinical findings support [the assessed]

20   limitations"; and (3) was "internally inconsistent." (A.R. 437; emphasis in original.) Like Dr.

21   Chang, Dr. Israel completed a one page, circle-alll-that-apply form with "no comments" or clinical

22   findings supporting the extent of the limitations he assessed. (Id.; emphasis in original); see

23   Tonapetyan, 242 F.3d at 1149 (noting an ALJ may reject a treating physician's opinion that is

24

25   evidence in support of his findings. Moreover, Dr. Malancharuvil, the medical expert and
     psychologist upon whose opinion the ALJ relied, specifically testified that plaintiff's treating
26   sources, including Dr. Chang, "generally tend[] to accept" plaintiff's subjective complaints --
     complaints which the ALJ found to be not credible. (A.R. 462-63 - noting that "if [plaintiff] goes
27   and says I'm paranoi[d,] [her treating sources] will write it as paranoia and so on and so forth"
     notwithstanding the fact that her "objective examination suggests [her mental status is essentially
28   intact.") Thus, because there is sufficient evidence supporting the ALJ's finding that Dr. Chang's
     opinion relied "too heavily" upon plaintiff's subjective complaints, plaintiff's contention fails.

11

1    "conclusory and brief and unsupported by clinical findings").  Further, his opinion that plaintiff had

2    "clearly organized" thoughts and only "'mild" impairments in memory and judgment appears to

3    be inconsistent with his conclusion that plaintiff would decompensate if forced to work a 40-hour

4    workweek.  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001)(upholding ALJ's rejection

5    of treating doctor's opinion that was internally inconsistent).  Thus, the ALJ provided specific and

6    legitimate reasons for rejecting the opinion of Dr. Israel.

7

8          (2)      The ALJ Fully And Fairly Developed The Record With Respect To Plaintiff's

9                   Drug Use.

10

11          An ALJ has an independent "duty to fully and fairly develop the record and to assure that

12    claimant's interests are considered." Tonapetyan, 242 F.3d at 1150 (internal quotation marks and

13    citations omitted).  This duty is triggered "only when there is ambiguous evidence or when the

14    record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459-60.

15    The ALJ can discharge this duty in several ways, including by:  (1) making a reasonable attempt

16    to obtain medical evidence from the claimant's physician(s); (2) ordering a consultative

17    examination when the medical evidence is incomplete or unclear; (3) subpoenaing or submitting

18    questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open

19    for more supplementation.  See Tonapetyan, 242 F.3d at 1150; 20 C.F.R. §§ 404.1512, 404.1517.

20

21          In its Remand Order, this Court found that "[t]he ALJ erred by failing to develop the record

22    regarding plaintiff's drug use."  (A.R. 529.)  Specifically, this Court noted that it was "entirely

23    unclear whether Dr. Chang's May 1, 2006 diagnosis of amphetamine abuse referred to [plaintiff's]

24    ongoing or prior substance abuse."  (A.R. 531.)  This Court found that "[w]ithout knowing when

25    plaintiff stopped using drugs, . . . the ALJ . . . could not have properly assessed plaintiff's [RFC]

26    or determined whether plaintiff met a listing in the absence of drug abuse."  (A.R. 532.)

27    Accordingly, this Court directed the ALJ to "recontact Dr. Chang to clarify his treatment notes with

28    respect to the timing and extent of plaintiff's drug use."  (A.R. 542.)  This Court noted that, while

12

1  "Dr. Chang's later treatment notes do not discuss plaintiff's drug use, his treatment notes may

2  reflect plaintiff's limitations and restrictions in the absence of drug use.  [Thus], further inquiry

3  may be appropriate."  (Id.)

4

5  Plaintiff claims that the ALJ failed to develop the record fully, because he did not recontact

6  Dr. Chang as directed by the Remand Order.  (Joint Stip. at 22-23.)  Plaintiff states that "had the

7  ALJ properly recontacted Dr. Chang and considered his opinions regarding plaintiff's mental

8  limitations, [the ALJ] may have come to a different conclusion regarding plaintiff's mental

9  impairments and restrictions on plaintiff's ability to perform work-related activities."  (Joint Stip.

10  at 22.)

11

12  While it is true that the ALJ did not recontact Dr. Chang, the ALJ properly developed the

13  record with respect to plaintiff's drug use by seeking the assistance of medical expert Dr.

14  Malancharuvil "to develop the record and resolve ambiguities [regarding plaintiff]'s drug use."

15  (A.R. 430.)  The ALJ noted that "[a]s Dr. Malancharuvil is a board certified psychologist, he has

16  the expertise to better interpret and evaluate [plaintiff]'s drug use and its effect, if any, on her

17  mental impairments."  (Id.)  Dr. Malancharuvil had the opportunity to review the medical evidence

18  of record, including the records from Dr. Chang, and to conduct an "extensive examination" of

19  plaintiff.  (A.R. 430, 452 -65.)  Based on his review of the record and plaintiff's testimony, Dr.

20  Malancharuvil opined that plaintiff was not abusing drugs during the relevant time period at issue,

21  and he assessed plaintiff's mental functioning "without the drugs."[8]  (A.R. 461-62.)  Finding

22  himself "satisfied with Dr. Malancharuvil's development [of the record] and testimony regarding

23  [plaintiff]'s drug use," the ALJ adopted Dr. Malancharuvil's findings.[9]  (A.R. 435.)  Accordingly,

24

25  [8]      The ALJ noted that Dr. Malancharuvil's examination of plaintiff "was complicated by
[plaintiff]'s alleged inability to 'remember' dates until [plaintiff] finally testified that she stopped
26  using any drugs after her Knollwood encounter [in 2002]."  (A.R. 430.)

27  [9]      The ALJ noted that Dr. Malancharuvil:

28  explained that between 2000 and 2002 the evidence indicates that [plaintiff] used
methamphetamines heavily.  [Dr. Malancharuvil] cited Dr. Chang's positive

13

because the ALJ resolved the ambiguity surrounding plaintiff's drug use in her favor -- to wit, finding that plaintiff's mental limitations during the relevant time period were not a product of then-present methamphetamine abuse -- any error arising from the ALJ's failure to contact Dr. Chang was harmless.

*        *        *

Accordingly for the aforementioned reasons, the ALJ committed no reversible error in complying with the directives of the Remand Order.

///

///

///

///

///

///

///

///

///

---

diagnoses as amphetamine abuse -- not by history -- but by positive diagnosis; and interpreted the diagnosis to indicate that even Dr. Chang was of the opinion that [plaintiff]'s abuse of methamphetamine[s] contributes to her underlying problems. Dr. Malancharuvil testified that many of her behaviors are consistent with methamphetamine use: particularly, easy irritability, suspicion of other people, and auditory and visual hallucinations.  Dr. Malancharuvil noted a social worker's assessment in 2006 of bipolar disorder and amphetamine abuse as [an] indication that the social worker was also aware of [plaintiff]'s drug use. Overall, however, Dr. Malancharuvil testified that the medical records 'keep saying' that [plaintiff] continues to feel better, that she is compliant, and that she is drug free. Whereas, in 2002, the Knollwood record indicates a positive urine screen for methamphetamines, there is no objective evidence thereafter to indicate that [plaintiff] was using methamphetamines at anytime thereafter, and it is based on the lack of affirmative evidence of drug use, that [Dr. Malancharuvil] accepted [plaintiff]'s testimony that she stopped abusing methamphetamines afer her Knollwood 'encounter.'

(A.R. 435; emphasis in original.)

14

CONCLUSION

      For all of the foregoing reasons, the Court finds that neither reversal of the Commissioner's decision nor remand is warranted.  Accordingly, IT IS ORDERED that the Commissioner's decision denying benefits is AFFIRMED, and that Judgment shall be entered affirming the decision of the Commissioner.

      IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

      LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  September 12, 2013

                        *Margaret A. Nagle*
                      _____
                        MARGARET A. NAGLE
               UNITED STATES MAGISTRATE JUDGE

15